IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP 1 1 2003

Michael N. Milby, Clerk

| | | |
|---|---|---|
| LARRY EDGAR ESTRADA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | MISC. NO. H-02-379 |
| | § | |
| GARY L. JOHNSON, Director, | § | |
| Texas Department of Criminal | § | |
| Justice. | § | **H-03-3660** |
| | § | |
| Respondent. | § | |

---

PETITION FOR WRIT OF HABEAS CORPUS

---

***THIS IS A DEATH CASE***

MAYER, BROWN, ROWE & MAW
Charles S. Kelley
James E. Tancula
700 Louisiana, Suite 3600
Houston, Texas 77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

ATTORNEYS FOR PETITIONER
LARRY EDGAR ESTRADA

**1.**

## INTRODUCTION AND STATEMENT OF JURISDICTION

In accordance with the jurisdiction conferred on this Court by 28 U.S.C. § 2254 (West Supp. 2003), and with the agreement of the Office of the Attorney General of the State of Texas with respect to the filing and amending of this petition, Petitioner Larry Edgar Estrada (also "Petitioner" or "Estrada") files this skeletal petition for a writ of habeas corpus. This petition seeks relief from an unconstitutional conviction and sentence of death entered by the 262nd Judicial District Court of Harris County, Texas. Mr. Estrada is being unlawfully held on death row by the Institutional Division of the Texas Department of Criminal Justice under the authority of Respondent.

**2.**

## APPOINTED COUNSEL'S INVESTIGATION OF CLAIMS AND PROCEDURAL AGREEMENTS

On December 30, 2002, the undersigned consented to appointment by this Court as *pro bono* counsel for Mr. Estrada for purposes of investigating and filing an application for a federal writ of habeas corpus challenging Mr. Estrada's conviction and death sentence. To date, the investigation of claims on behalf of Mr. Estrada has included a review of all available materials, including the record of the trial, appellate, and state post-conviction proceedings, the files of Mr. Estrada's former counsel, and conversations with, interviews of, and background checks on many individuals with knowledge relevant to Mr. Estrada's case, including a number of the jurors from Mr. Estrada's trial, Mr. Estrada's former counsel, and some of Mr. Estrada's relatives. Mr. Estrada's counsel has also reviewed the State's file in this matter, although Mr. Estrada's request for access to the State of Texas's file under the Texas Open Records Act, made on April 18, 2003, was not accommodated until July 30, 2003. Even at that time, certain

information in the State's file, such as the juror information sheets used for Mr. Estrada's trial, was withheld by the state on grounds of work product privilege, which made it necessary for Mr. Estrada's counsel to return to the trial court to seek an order releasing the court's copy of the juror information sheets.

Counsel's investigation and development of Mr. Estrada's claims is necessarily continuing, and counsel for the State has agreed to the filing of this petition in the form of a "skeletal" original petition setting forth all of Mr. Estrada's potential claims by the deadlines set forth under the Antiterrorism and Effective Death Penalty Act. The parties have further agreed that the State need not and will not answer Mr. Estrada's skeletal petition and that Mr. Estrada will amend and supplement or withdraw certain claims in light of the results of counsel's continuing investigation and development of claims within 90 days of the filing of this original petition.

## **3.**

## **FACTUAL AND PROCEDURAL BACKGROUND**

On February 18, 1998, a jury convicted Mr. Estrada of capital murder. (Ex. 1, Reporter's Record, Vol. 21 at 40.)[1] On February 23, 1998, the trial court sentenced Mr. Estrada to death based on the answers that the jury returned to the special issues submitted to them. (Ex. 2, Reporter's Record, Vol. 24 at 53.) On Mr. Estrada's direct appeal, the Court of Criminal Appeals ("CCA") affirmed his conviction and sentence. (Ex. 3, *Estrada v. State*, No. 73,054, slip op. at 16 (Tex. Crim. App. September 15, 1999)(unpublished).) Mr. Estrada's conviction and sentence became final when the United States Supreme Court denied his petition for writ of certiorari on October 10, 2000. *Estrada v. State*, 531 U.S. 828 (2000). The Court of Criminal

---

[1] All numbered exhibits are attached to Appendix A, Affidavit of Charles S. Kelley.

Appeals denied Mr. Estrada's initial state application for postconviction relief on October 9, 2002. (Ex. 4, State Habeas Denial by CCA.) This original petition follows.

## 4.

## CLAIMS

**A.      CUMULATIVE ERROR**

1.      **THE CUMULATION OF ERROR IN THIS CASE RENDERS THE CONVICTION UNCONSTITUTIONALLY UNRELIABLE**

The issues discussed below cannot be viewed in isolation. Petitioner incorporates all of the issues below and asserts his right to a fair trial, free from the cumulative taint of each of the errors combined.

2.      **THE CUMULATION OF ERROR IN THIS CASE RENDERS THE SENTENCING VERDICT IN THIS CASE UNCONSTITUTIONALLY UNRELIABLE**

In the same manner as set out above, the cumulative effect of the errors in this case—both from the punishment phase and from the spill-over effect of the errors at the guilt and innocence phase—tainted the jury's verdict as to sentence. Likewise, then, just as the courts must review the complete record to determine whether the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, so this Court must review the entire record for the cumulative impact of the issues discussed below.

**B.      NEWLY DISCOVERED EVIDENCE**

Newly discovered evidence in this case that was not and could not have been found despite the exercise of reasonable diligence reveals that:

1.      Estrada is not guilty of the offense charged; and

2.      Estrada would not have received the death penalty for offense charged.

Accordingly, Estrada's constitutional rights are violated in the absence of a new trial in either the guilt and innocence or punishment phase or both.

**C.** **INEFFECTIVE ASSISTANCE OF COUNSEL**

1. Estrada received ineffective assistance of counsel at the guilt and innocence phase of his trial because his counsel:

   a. was not qualified to litigate a capital case as serious as this one;

   b. suffered from his own independent problems that prevented him from effectively representing his client;

   c. developed no meaningful relationship with Estrada and was therefore not able to establish sufficient trust to learn information critical to the defense;

   d. failed to secure adequate funds for a reasonably diligent investigation of the case;

   e. failed to secure adequate funds for the experts needed in the case;

   f. failed to thoroughly investigate and present effectively critical aspects of the defense by failing to:

      (1) sufficiently investigate and prove that someone else committed the crime charged;

      (2) sufficiently investigate and present effectively the defense of intoxication which was available in the case;

      (3) sufficiently investigate and present effectively various other defenses that might have been presented in this case, including without limitation available mental deficiency or insanity defenses, or available mental-state defenses lesser than insanity;

      (4) sufficiently investigate and present effectively the possibility that the accused was guilty only of a lesser included offense in the case and properly substantively and procedurally present the possibility that the accused was guilty only of a lesser included offense;

      (5) effectively investigate, find, and present witnesses who could have presented important potentially exculpatory or potentially mitigating evidence on behalf of the defense;

      (6) effectively investigate, find, and present evidence to contradict, impeach, or otherwise nullify the testimony of the State witnesses at trial; and

    (7)    effectively investigate, find, and present documentary evidence that was potentially exculpatory or potentially mitigating evidence that was vitally important in his case;

g.    failed to ensure that he was sufficiently familiar with the relevant law prior to taking on a complex capital case;

h.    was ineffective for failing to properly investigate, litigate or otherwise present issues surrounding Estrada's competency to stand trial by failing to:

    (1)    effectively investigate and litigate regarding Estrada's pretrial lineup;

    (2)    effectively litigate the issue of Estrada's competency with regard to the pertinent issues in his defense, including without limitation whether Estrada was competent to assist adequately in the defense of his case;

    (3)    effectively litigate the issue of Estrada's competency to proceed while medicated;

    (4)    effectively litigate the issue of Estrada's competency to proceed to trial without his medication; and

    (5)    effectively litigate the issue of Estrada's competency to make the decision to waive rights and proceed pro se effectively;

i.    failed to prepare and present effectively important motions prior to trial by failing to:

    (1)    effectively challenge the indictment prior to trial;

    (2)    effectively bar the prosecution of the charges based on violation of Estrada's right to a speedy trial;

    (3)    effectively litigate the issue of discovery;

    (4)    move effectively for a severance of offenses;

    (5)    move effectively for a continuance to secure the attendance of witnesses or for complete preparation for the trial;

    (6)    move effectively for the suppression of certain evidence obtained in violation of the United States Constitution prior to trial because:

        (a)    the magistrate was not neutral and detached in that:

(i)     the magistrate was intimately involved in the entire investigation against Estrada in this case, which creates an independent bar to his issuing the warrant; and

(ii)    the magistrate rubber-stamped the police application for a warrant, without making any independent evaluation of probable cause;

(b)     there was no valid warrant in support of the search;

(c)     there was no valid warrant in support of the arrest;

(d)     the warrant was illegally obtained;

(e)     the warrant was not served prior to the search, thereby rendering the search illegal;

(f)     the search exceeded the scope of the warrant, which was anyway insufficiently specific;

(g)     there was no probable cause in support of the warrant;

(h)     the affidavit in support of the warrant contained false and intentionally misleading statements;

(i)     the accused was illegally arrested;

(j)     evidence should have been suppressed due to a pretextual arrest; and

(k)     evidence should have been suppressed due to an illegal entry;

(7)     move effectively for the suppression of the statement made by the accused prior to trial because:

(a)     evidence would have shown a substantial claim that the statement was involuntary;

(b)     evidence would have shown a substantial claim that the statement was taken in violation of the Fifth Amendment right to remain silent;

(c)     evidence would have shown a substantial claim that the client was not capable of a "waiver" of *Miranda* rights;

        (d)     evidence would have shown a substantial claim that the statement was exacted after the client asserted the Fifth Amendment right to counsel; and

        (e)     evidence would have shown a substantial claim that the statement was exacted in violation of the Sixth Amendment;

(8)    move effectively for the suppression of the identification made of the accused prior to trial in that:

        (a)     the defense failed to effectively dispute during trial the identification of the accused;

        (b)     the manner in which the defense counsel presented the identification issue was ineffective; and

        (c)     counsel allowed the State to buttress a weak identification case at trial with inadmissible evidence;

(9)    move effectively for the suppression of photographs and video;

(10)   litigate effectively the recusal of the judge or prosecutor;

(11)   move effectively for a bench trial prior to trial;

(12)   litigate issues effectively involving witness immunity;

(13)   litigate various other significant pre-trial matters effectively;

(14)   avoid litigating only a series of frivolous motions prior to trial; and

(15)   litigate effectively a pre-trial writ or appeal on issues of significance;

j.    was ineffective in failing vigorously to pursue plea negotiations prior to trial to avoid the possibility and risk of the death penalty because:

(1)    his counsel gave Estrada erroneous and inadequate advice when it came to the decision whether to plead guilty; and

(2)    his counsel had interests that were antithetical to Estrada's interests in giving inadequate advice on the decision not to plead guilty;

k.    failed to effectively litigate discrimination in the jury pools;

l.    failed to ensure adequate voir dire conditions, and failed to conduct a thorough and adequate voir dire by failing to:

(1)     secure adequate voir dire conditions so that the jurors would provide the information necessary to the exercise of defense challenges;

(2)     ask the kinds of written and oral questions necessary to elicit information from prospective jurors sufficient for the meaningful exercise of cause and peremptory challenges;

(3)     take adequate steps to prevent the state from discriminating in jury selection, including failing to:

    (a)     litigate effectively the manner in which the State improperly discriminated on the basis of race and gender in jury selection;

    (b)     litigate effectively the manner in which the State improperly discriminated on the basis of other group characteristics;

(4)     preserve Estrada's right to use his peremptory challenges;

(5)     prevent various jurors from being improperly excused for cause by failing to:

    (a)     object to the elimination of jurors who were excluded for cause without an adequate showing that they opposed the death penalty;

    (b)     "rehabilitate" jurors to ensure that they were not excluded for cause because of their views in purported opposition to the death penalty;

    (c)     ensure that jurors were not excused for cause for inadequate reasons;

    (d)     to conduct a voir dire sufficient to ensure the removal for cause of various jurors by failing to:

        (i)     ensure that jurors were excluded for cause even though they were so strongly in favor of the death penalty that they were excludable for cause;

        (ii)    ensure that jurors were excused for cause where they were biased against the accused by failing to:

            a)     exclude jurors who were biased towards conviction in general;

      b)    strike jurors who were predisposed towards guilt in this case;

      c)    ensure that jurors who were closely related to law enforcement were struck either for cause or peremptorily;

      d)    ensure that jurors were struck for cause or peremptorily who were biased against the defense because of their own experiences;

      e)    ensure that jurors were struck for cause who felt so strongly about the particular charges that they could not follow the law;

      f)    ensure that jurors were struck for cause who would not respect Estrada's Fifth amendment right to remain silent; and

      g)    ensure that the court actually struck the biased jurors who were meant to be struck;

(iii)    performing so badly during voir dire that he actually alienated jurors to Estrada's cause;

m.    was ineffective for failing to preserve the client's right to an effective opening statement by:

    (1)    giving an unprofessional opening statement that was severely detrimental to Estrada's case;

    (2)    promising in opening statement that he would present evidence which was never produced;

    (3)    opening the door to extremely prejudicial evidence that could otherwise not have come into the trial;

    (4)    making extravagant statements in opening that not only placed an undue burden on Estrada, but also promised that which counsel could not deliver; and

    (5)    failing to explain to Estrada that he had the fundamental right to present his own portion of opening statement;

n.    was ineffective for failing to develop a meaningful and consistent theme in the presentation of the defense;

o.  was ineffective in failing to prevent the admission of prior bad acts allegedly committed  by the accused by failing to:

    (1)  secure adequate notice of the prior bad acts that were to be used against Estrada;

    (2)  demand a hearing on the admissibility of the prior bad acts that were to be used against his client;

    (3)  act to prevent the use of prior convictions that were unconstitutionally obtained or allegations of prior bad acts that were false, and present sufficient evidence that Estrada's rights were impaired with respect to the prior convictions or allegations of prior bad acts:

        (a)  a denial of the assistance of counsel;

        (b)  a denial of the effective assistance of counsel;

        (c)  the invalidity of a guilty plea;

        (d)  the invalidity of a confession;

        (e)  a Fourth Amendment violation;

        (f)  a *Brady* violation;

        (g)  a denial of the right to appeal;

        (h)  a denial of the right to a jury trial;

        (i)  Estrada's incompetence at the time of the earlier conviction;

        (j)  Estrada's acquittal of the previous crime;

        (k)  the lack of finality of the conviction;

        (l)  the reversal of the conviction; and

        (m)  other reasons the convictions and allegations were invalid and false, including the fact that it is uncontroverted that Estrada could not have been responsible for the alleged prior offenses;

    (4)  object effectively to comments about prior bad acts and convictions at the trial by:

11

       (a)     allowing references to be made to prior bad acts and convictions at the first phase of the trial which were inadmissible; and

       (b)     initially making the right objection but then sitting by while the prosecution improperly presented evidence of the prior bad acts;

(5)     object effectively to prior bad acts and convictions at the trial that were not admissible for the purposes for which they were offered;

(6)     object effectively when the prosecution made false statements concerning the client's prior record;

(7)     object effectively to the improper manner in which the State sought to prove or otherwise present evidence of bad acts at the trial;

(8)     object effectively to the improper evidence that was introduced in support of the bad acts and the extent and manner in which the State went about proving the allegations of prior bad acts, in that:

       (a)     the State used hearsay and other inadmissible evidence in support of the prior bad acts; and

       (b)     the State went far beyond the scope of admissible evidence in support of the prior bad acts;

(9)     object effectively to the improper manner in which the State sought to use evidence of bad acts that was properly admitted for other purposes;

p.    was ineffective for failing to challenge the competency of the State's witnesses to testify in the trial by failing to:

(1)     challenge effectively the competency of witnesses who testified in violation of privilege; and

(2)     challenge effectively the competency of witnesses who were too young to testify;

q.    was ineffective for failing to effectively impeach the State's witnesses with powerful evidence such as:

(1)     the witnesses' prior testimony;

(2)     the witnesses' prior statements;

(3)     evidence that was clearly exculpatory to Estrada;

    (4)     the witnesses' motive to lie against Estrada; and

    (5)     the witnesses' prior criminal records;

r.     failed to prepare effectively for cross-examination of witnesses by ensuring that he had transcripts and statements from them;

s.     was ineffective with respect to "expert" evidence presented by the State by failing to:

    (1)     object effectively to inadmissible "expert" evidence presented by the State;

    (2)     challenge effectively the qualifications of the State "expert";

    (3)     challenge effectively the erroneous results of State "expert"; evidence

    (4)     challenge the questionable results of State "expert" evidence and essentially stipulating to those results;

    (5)     make effective use of exculpatory State expert evidence;

    (6)     effectively secure competent independent experts to challenge the evidence against his client by failing to:

        (a)     secure effective ballistics evidence;

        (b)     secure effective blood testing;

        (c)     secure effective assistance from a crime scene reconstruction expert;

        (d)     secure effective DNA evidence;

        (e)     secure effective expert pathology assistance; and

        (f)     secure expert evidence on the victim's propensity for violence;

t.     was ineffective for failing to object  and respond effectively to inadmissible questions, comments, and evidence presented by the State by failing to:

    (1)     object effectively to inadmissible hearsay evidence or otherwise challenge limitations the trial court placed upon counsel to effectively cross-examine certain witnesses in violation of the Confrontation Clause;

(2)     object effectively to victim impact evidence and character evidence offered at the guilt and innocence phase of the trial;

(3)     object effectively to comments in violation of Estrada's Constitutional rights by failing to:

      (a)     object effectively to comments made in violation of Estrada's Constitutional right to remain silent;

      (b)     object effectively to comments made concerning Estrada's silence after being read his *Miranda* rights; and

      (c)     object effectively to comments made concerning Estrada's assertion of his Fourth Amendment rights;

(4)     object effectively to inadmissible evidence and comments;

u.     was ineffective for injecting into the trial highly prejudicial evidence that was otherwise inadmissible by:

(1)     injecting into the trial highly prejudicial evidence concerning the defense witnesses' alleged prior bad acts; and

(2)     injecting into the trial highly prejudicial evidence that would have been objectionable or otherwise excludable had it been brought out by the State;

v.     was ineffective for failing to present evidence that was important to the defense by failing to:

(1)     ensure the attendance of witnesses crucial to the defense; and

(2)     take steps to ensure that all relevant evidence would be available to the defense;

w.     was ineffective in the manner in which he dealt with Estrada's right to testify on his own behalf by failing to:

(1)     advise Estrada that it was his right alone to determine whether he should testify on his own behalf;

(2)     giving erroneous advice regarding Estrada's rights to testify on his own behalf which contributed to Estrada electing not to take the stand;

(3)     effectively advise Estrada that he should testify in the trial of this case;

> (4)  avoid bringing out highly inadmissible evidence of Estrada's bad acts; and
>
> (5)  investigate properly and give adequate advice to Estrada prior to making the decision whether to testify;

x.  was ineffective for failing to prevent the State from injecting inadmissible evidence into the case during rebuttal;

y.  was ineffective in his presentation of closing argument at the guilt and innocence phase of the trial because:

> (1)  his counsel presented a thoroughly inadequate closing argument on behalf of Estrada in that:
>
> > (a)  his counsel delivered a very brief and entirely ineffectual closing argument; and
> >
> > (b)  his counsel may entirely inappropriate comments about Estrada;
>
> (2)  his counsel effectively conceded that Estrada was guilty of the crime charged by:
>
> > (a)  effectively conceding in closing that Estrada was guilty of a lesser offense; and
> >
> > (b)  effectively telling the jury that the client's story was not worthy of belief rather than arguing forcefully for Estrada;
>
> (3)  his counsel failed to take steps to prevent the limitation of the right to closing argument; and
>
> (4)  his counsel failed to advise Estrada of his right to take part in closing argument;

z.  failed to object effectively to clearly improper arguments made by the prosecution in this case in that:

> (1)  his counsel failed to object effectively to the State's comments on his Constitutional rights by failing to:
>
> > (a)  object effectively to the comments made by the prosecution on Estrada's right to remain silent; and
> >
> > (b)  object effectively to the comments made by the prosecution on Estrada's silence after he had been read his *Miranda* warnings;

      (2)      his counsel failed to object effectively to various improper comments during the State's closing; and

      (3)      his counsel failed to object to victim impact evidence improperly offered during the guilt and innocence phase;

aa.      was ineffective for failing to challenge effectively the sufficiency of the State's evidence;

bb.      was ineffective for failing to ensure that the trial court properly responded to questions from the jury;

cc.      was ineffective in his handling of the jury instructions at the guilt and innocence phase of the trial by failing to:

      (1)      tender effectively important definitions, instructions and questions for the defense;

      (2)      object effectively to definitions, instructions, and questions that misstated the law;

      (3)      avoid agreeing to definitions, instructions, and questions that misstated the law;

      (4)      avoid tendering definitions, instructions, and questions that misstated the law; and

      (5)      obtain an antisympathy instruction;

dd.      was ineffective in his failure to object effectively to the improper verdict in this case;

2.      Estrada received ineffective assistance of counsel at the punishment phase of his trial because his counsel:

a.      was not qualified to handle the punishment phase of a capital trial and did not fully understand what that required;

b.      anticipated a verdict less than capital at the first phase of the trial and therefore was not prepared for the punishment phase of the trial;

c.      failed to secure the time necessary to prepare his case;

d.      failed to object effectively to the State's improper opening statement;

e.      failed to effectively present a meaningful opening statement;

f.      failed to object effectively to the improper presentation of evidence by the prosecution at the punishment phase of the trial;

g.  failed to object effectively to evidence improperly offered by the prosecution to "prove" an extraneous offense Estrada did not commit and could not have committed;

h.  failed to object to the prosecution's improperly urging the jury to convict Estrada on the basis of improperly admitted victim impact evidence;

i.  failed to litigate effectively the issue of victim impact evidence in a meaningful manner;

j.  failed to object to improper presentation of victim impact evidence from someone not named in the indictment;

k.  failed to deal effectively with the jurors' speculation that the client might one day be released from prison;

l.  failed to effectively exclude aggravating circumstances that were not legally applicable to this case;

m.  failed to effectively exclude inadmissible evidence of prior bad acts or convictions;

n.  failed to effectively develop and present a theme in mitigation;

o.  failed to effectively conduct a professional and effective investigation;

p.  failed to effectively investigate and present significant evidence in mitigation by failing to:

(1)  effectively investigate and present mitigating evidence concerning Estrada's youth;

(2)  effectively investigate and present mitigating evidence concerning Estrada's mental status;

(3)  effectively investigate and present mitigating evidence concerning Estrada's mental and psychological state;

(4)  effectively investigate and present mitigating evidence concerning the emotional disturbances and mental illness suffered by Estrada;

(5)  effectively investigate and present mitigating evidence concerning the abuse suffered by Estrada, including evidence that Estrada:

(a)  suffered a very disadvantaged childhood; and

(b)  suffered terrible abuse as a child;

(6)    effectively investigate and present mitigating evidence concerning the significant role played in the crime by other persons in light of the facts that:

    (a)    Estrada was a follower, not a leader, in this crime; and

    (b)    Estrada played a lesser role in the crime;

(7)    effectively investigate and present mitigating evidence concerning Estrada's adaptation to prison conditions;

(8)    effectively investigate and present mitigating evidence concerning Estrada's remorse;

(9)    effectively investigate and present mitigating evidence concerning Estrada's sincere religious faith;

(10)    effectively investigate and present mitigating evidence concerning the number of people who would suffer if Estrada were to be executed;

(11)    effectively investigate and present effectively mitigating evidence concerning Estrada's long-term substance abuse;

(12)    effectively investigate and present mitigating evidence concerning Estrada's intoxication at the time of the crime;

(13)    effectively investigate and present evidence concerning Estrada's good character;

(14)    effectively investigate and present evidence concerning Estrada's reputation for being hardworking;

(15)    effectively investigate and present evidence concerning cultural impacts on Estrada's life; and

(16)    effectively investigate and present evidence concerning various other significant mitigating circumstances;

q.    failed to effectively present evidence in mitigation for invalid reasons because his counsel:

(1)    misunderstood the law concerning the submission of mitigating circumstances to the jury;

(2)    failed to effectively present evidence that, while potentially inadmissible at the first phase of the trial, was admissible in mitigation;

      (3)    failed to effectively apprise Estrada of his right to testify or allocute at the punishment phase;

r.    failed to litigate effectively to prevent improper "rebuttal" evidence at the punishment phase of the trial;

s.    failed to present an effective closing argument at the punishment phase of the trial;

t.    failed to take effective steps to prevent the state from violating his client's rights in closing argument at the punishment phase of the trial;

u.    failed to object to improper argument by the State at the punishment phase of trial;

v.    failed to secure an adequate instruction requiring jurors to disregard the improper argument by the State;

w.    was ineffective in his handling of the instructions at the punishment phase of the trial; and

x.    failed to prevent the jury from being coerced into a unanimous verdict at the punishment phase of the trial;

3.    Estrada received ineffective assistance from the experts who were to assist him at his trial;

4.    Estrada received ineffective assistance of counsel at his motion for a new trial;

5.    Estrada received ineffective assistance of counsel on appeal because his counsel failed to:

a.    ensure that there was a complete record on which to base the appeal;

b.    raise various significant issues that should have been included in the appeal;

c.    present an effective argument before the Court of Criminal Appeals; and

d.    present a competent argument on petition for certiorari to the United States Supreme Court; and

6.    Estrada received ineffective assistance of counsel in his state post-conviction proceedings.

## D.    INEFFECTIVENESS – CONFLICT

1.    Estrada's counsel created a conflict of interest during his representation at trial by violating Estrada's privilege;

2.   Estrada's counsel suffered from a conflict of interest during his representation at trial because:

    a.   his counsel's personal relationship with others involved in the case created a conflict of interest;

    b.   his counsel's professional relationship with others involved in the case created a conflict of interest;

    c.   the fact that his counsel was being accused of misconduct himself created a conflict of interest; and

    d.   the fact that Estrada and his counsel had irreconcilable differences created a conflict of interest; and

3.   Estrada's counsel suffered from a conflict of interest during his representation on appeal.

## E.   *BRADY* VIOLATIONS

1.   There is a reasonable probability that, but for the suppression of favorable evidence by the State, the outcome of the trial would have been different. In this regard the State violated Estrada's right to due process and a fair capital trial by:

    a.   turning over important discovery to the defense too late for the proper development of the defense;

    b.   suppressing evidence that would have assisted the defense in challenging Estrada's confession;

    c.   suppressing evidence concerning Estrada's mental state at the time of the offense/trial;

    d.   suppressing evidence that would have supported the defense theory in this case;

    e.   suppressing evidence that would have helped the defense prove that someone else might have committed this crime;

    f.   suppressing evidence that a witness at trial had previously told an inconsistent story in an earlier statement;

    g.   suppressing evidence that a witness at trial had previously omitted important facts in an earlier statement;

    h.   suppressing evidence of a witness who could have been helpful to the defense;

i.     suppressing evidence that one of its witnesses expected a benefit for testifying against Estrada;

j.     suppressing evidence that a witness had been threatened if he did not testify for the State;

k.     suppressing evidence that a witness had a particular motive to testify against Estrada;

l.     suppressing evidence that there were particular reasons to doubt the credibility of a witness against Estrada;

m.    suppressing evidence that would have called into question the reliability of the eyewitness testimony against Estrada;

n.     suppressing evidence that was important to the assessment of the informant against Estrada;

o.     suppressing evidence that the police had acted improperly in the preparation of this case;

p.     suppressing physical evidence;

q.     suppressing expert evidence;

r.     actively seeking to make witnesses unavailable to the defense; and

s.     presenting perjured evidence; and

2.    there is a reasonable probability that, but for the suppression of favorable evidence by the State, the outcome of the punishment phase would have been different.

## F.     TRIAL COURT ERROR

1.    Evidence of an extraneous offense that Larry Estrada did not commit was improperly admitted at trial.

2.    Victim impact evidence was improperly admitted at the guilt and innocence phase of Estrada's trial.

3.    The trial court abused its discretion in responding to a jury note during the guilt phase in a manner that was unrealistic, unnecessarily restrictive and highly prejudicial, in violation of Estrada's due process rights.

4.    The trial court erred in giving a mitigation instruction that failed to instruct the jury as to which party had the burden of proof on mitigation.

5.     The mitigation special issue is legally deficient and violates the 8th Amendment in that it eliminates any meaningful review of the jury's determination.

6.     The court erred in instructing the jury on the "12-10 Rule," which states that it requires at least 10 "NO" votes for the jury to return a negative answer, which is false and violates the 6th, 8th, and 14th amendments.

7.     The trial court committed reversible error by denying Estrada's request that the jury be informed that failure to answer a special issue results in a life sentence in violation of Mr. Estrada's 8th Amendment rights.

8.     Estrada's 8th Amendment right to have the jury fully consider all mitigating evidence was denied by the trial court's error in denying Estrada's challenge to the statutory wording limiting the jury's consideration to those factors that reduced moral blameworthiness.

9.     The trial court failed to instruct the jury that it was required to consider mitigating evidence in determining the appropriate evidence in determining the appropriate punishment in violation of Mr. Estrada's 6th, 8th, and 14th Amendment rights.

10.    The trial court violated Estrada's 8th Amendment rights because it imposed the death penalty, which as applied and administered in Texas currently is cruel and unusual punishment.

11.    The trial court failed to give a sufficient instruction for the jury to disregard improper evidence of an extraneous offense that Estrada did not commit.

12.    The trial court failed to award relief in favor of Estrada in that the State's evidence is constitutionally insufficient to prove beyond a reasonable doubt that Estrada is guilty of capital murder.

13.    The trial court failed to award relief in favor of Estrada in that the State's evidence is insufficient to establish beyond a reasonable doubt that Estrada's conduct allegedly caused the death of the victim, was committed deliberately, and was committed with reasonable expectation that death would result.

14.    The trial court failed to award relief in favor of Estrada in that the State's evidence for Estrada's future dangerousness is insufficient to support his death sentence.

15.    The trial court committed reversible error by incorrectly applying federal law in addressing challenges by Estrada to the conduct of the State with respect to procedural and discovery issues.

16.    The trial court violated Estrada's right to confront his accuser by admitting evidence and statements as to which Estrada was limited or not afforded a full opportunity to cross-examine or impeach such evidence or testimony.

17.     The trial court violated Estrada's right to due process by admitting evidence during the guilt and innocence or sentencing phase of the trial which solely or unfairly prejudicially was used to inflame the minds, passions, or prejudices of the jurors.

18.     The trial court erred in granting the State's challenges for cause and/or denying the defense's challenges for cause in violation of Estrada's 6th and 14th Amendment rights.

19.     The trial court violated Estrada's rights under the 8th and 14th Amendments by failing to prevent the State from inflaming the passion and prejudice of the jury during the guilt and innocence phase and/or the sentencing phase during the State's closing arguments and failing properly to instruct the jury with respect to the State's improper conduct.

## G.     JURY MISCONDUCT

Misconduct by the jurors in this case requires that the convictions and sentence be overturned.  This is because jurors:

1.     failed to answer accurately and honestly on voir dire, thereby depriving the defense of the right to exercise cause challenges and to meaningfully exercise peremptory challenges;

2.     committed misconduct during the trial of this case resulting in a presumption of prejudice to the defense because:

   a.     the jurors conducted their own experiments and external investigation to determine how the crime might have happened;

   b.     the jurors visited the crime scene in violation of the rules of sequestration;

   c.     the jurors were exposed to external media concerning the case;

   d.     the jurors were exposed to contact with others in violation of the rule of sequestration;

   e.     the bailiff had improper contact with the jurors during the trial of the case; and

   f.     the bailiff was too close to the case and should not have been permitted to oversee the jurors;

3.     had improper contact with the trial court without giving notice to the defense;

4.     behaved in ways inconsistent with Estrada's right to a fair trial;

5.     were not competent to serve as jurors and should have been replaced;

6.    engaged in racial or other impermissible discrimination;

7.    prejudged the case in violation of Estrada's right to an impartial jury and began their deliberations before being authorized to do so;

8.    horse-traded judgments in violation of Estrada's right to an unanimous and just determination;

9.    participated in tainted deliberations when more than twelve persons were allowed into the jury room because:

    a.    an alternate was permitted in the jury room in violation of Estrada's rights;

    b.    an unauthorized person was permitted in the jury room in violation of Estrada's rights;

    c.    the jurors were provided with materials that should not have been sent back with the jury;

10.    were subjected to improper contacts by the bailiffs;

11.    had unauthorized materials in the jury room during deliberations such as:

    a.    legal definitions form sources other than the trial court's instructions; and

    b.    unauthorized materials with which to look up significant terms in the case;

12.    were exposed to a bible in their deliberations in violation of the law;

13.    engaged in improper discussions and deliberations in reaching their verdict by:

    a.    conducting improper experiments in the jury deliberations;

    b.    basing their verdict on facts that had not been presented at trial but were supposedly known to individual jurors;

    c.    basing their verdict on facts and issues that had not been raised and presented at trial;

    d.    improperly discussing Estrada's failure to take the stand on his own behalf in the jury deliberations;

    e.    improperly discussing the possibility that Estrada would be paroled;

    f.    improperly averaging their opinions during the jury deliberations; and

    g.    being improperly permitted to separate during the deliberations in this case.

**H.     ISSUES OF COMPETENCY**

1.      Estrada was not competent at the time of his trial and sentencing proceedings as a result of being under the influence of powerful drugs.

2.      There were sufficient facts before the trial court to require a hearing on Estrada's competency at the time of the trial and sentencing proceedings.

3.      The convictions used against Estrada at his trial and sentencing proceedings were unconstitutionally or illegally obtained.

4.      Estrada's guilty plea was not knowing, intelligent and voluntary.

5.      Estrada did not waive his right to testify on his own behalf in a knowing, intelligent and voluntary manner.

6.      the proceedings against Estrada were tainted by racial discrimination.

7.      There is insufficient evidence that Estrada was guilty of the crimes charged against him.

8.      There is insufficient evidence to support the death sentence imposed upon Estrada.

9.      The manner of execution in this case, and the delay in carrying it out, violates the Constitution and international obligations of this country.

**I.     STATE MISCONDUCT**

1.      Estrada was denied due process when prosecutors failed in their duty to investigate sufficiently any extraneous offense that improperly "proved" an aggravated robbery.

2.      Estrada was denied due process in that the prosecution knew or should have known it was presenting false evidence and the false evidence would have affected the judgment of the jury.

3.      The State of Texas's failure to disclose material exculpatory evidence undermines confidence in the reliability of the verdict.

4.      Estrada's Constitutional rights were violated by State misconduct with respect to his pretrial identification.

5.      Estrada's Constitutional rights were violated by the State's use of an improperly suggestive lineup.

6.      The prosecution improperly presented and relied upon victim impact evidence at the guilt and innocence phase of Estrada's trial.

7.  The prosecution improperly urged the jury to convict Estrada on the basis of improperly admitted victim impact evidence.

8.  The prosecution improperly elicited victim impact testimony at the punishment phase from someone not named in the indictment.

## 5.

## PRAYER FOR CONSTITUTIONAL RELIEF

Estrada respectfully requests that this Court:

1.  Issue a writ of habeas corpus to have him brought before it, to the end that he may be discharged from his unconstitutional confinement and restraint and/or be relieved from his unconstitutional sentence of death.

2.  Grant him discovery, expert, and investigative assistance, and an evidentiary hearing at which he may present evidence in support of these claims, and allow him a reasonable period of time in which to brief the issues of law and fact raised by the petition and evidentiary hearing.

Dated this 11th day of September, 2003.

Respectfully submitted,

By: _____
Charles S. Kelley
Texas State Bar No. 11199580
Federal I.D. No. 15344

MAYER, BROWN, ROWE & MAW
700 Louisiana, Suite 3600
Houston, Texas 77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

**ATTORNEY-IN-CHARGE FOR
PETITIONER LARRY EDGAR ESTRADA**

Of counsel:

James E. Tancula
Texas State Bar No. 19634050
Federal I.D. No. 15155
MAYER, BROWN, ROWE & MAW
700 Louisiana, Suite 3600
Houston, Texas 77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on Counsel for Respondent via certified mail, return receipt requested, on this 11th day of September, 2003 at the following address:

Ms. Tina Dettmer
Office of the Attorney General
Post-Conviction Litigation Division
209 West 14th Street, 7th Floor
Austin, TX  78701

Charles S.  Kelley

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY EDGAR ESTRADA,　　　§
　　　　　　　　　　　　　　　§
　　　　Petitioner,　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　　MISC. NO. H-02-379
　　　　　　　　　　　　　　　§
GARY L. JOHNSON, Director,　　§
Texas Department of Criminal　　§
Justice.　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
　　　　Respondent.　　　　　　§

### AFFIDAVIT OF CHARLES S. KELLEY

COUNTY OF HARRIS　　　§
　　　　　　　　　　　　§
STATE OF TEXAS　　　　§

　　　BEFORE ME, the undersigned authority, did personally appear Charles S. Kelley, who

upon being duly sworn did state as follows:

　　　1.　　"My name is Charles S. Kelley. I am over 21 years of age and have never been
convicted of a crime of moral turpitude. I am one of the attorneys representing Larry Edgar
Estrada in his Petition for Writ of Habeas Corpus pending before this Court. I have personal
knowledge of the matters contained herein and they are true and correct.

　　　2.　　"Attached as Exhibit 1 to this Affidavit are true and correct copies of the cover
page and pages 37-40 of Volume of 21 of the Reporter's Record in the case of Estrada v. State,
No.746585, as photocopied for the law firm of Mayer, Brown, Rowe & Maw at my direction
from the files maintained by the Harris County District Court Clerk's office.

　　　3.　　"Attached as Exhibit 2 to this Affidavit are true and correct copies of the cover
page and pages 53-55 of Volume of 21 of the Reporter's Record in the case of Estrada v. State,
No.746585, as photocopied for the law firm of Mayer, Brown, Rowe & Maw at my direction
from the files maintained by the Harris County District Court Clerk's office.

　　　4.　　"Attached as Exhibit 3 to this Affidavit is a true and correct copy of the
Unpublished Opinion of the Texas Court of Criminal Appeals in the case of Estrada v. State, No.
73,054, denying Larry Edgar Estrada's direct appeal on September 15, 1999, as photocopied for
the law firm of Mayer, Brown, Rowe & Maw at my direction from the files maintained by the
Texas Court of Criminal Appeals.

5.      "Attached as Exhibit 4 to this Affidavit is a true and correct copy of a notation of order on Larry Edgar Estrada's state application for writ of habeas corpus which indicates that the Texas Court of Criminal Appelas per curiam denied Mr. Estrada's state habeas petition on October 9, 2002, as photocopied for the law firm of Mayer, Brown Rowe & Maw at my direction from the files maintained by the Texas Court of Criminal Appeals."

Further Affiant sayeth not.

_____
Charles S. Kelley

Sworn to and subscribed before me this 11th day of September, 2003.

_____
Notary Public in and for

the State of TEXAS

PAMELA PARKER
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 3, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY EDGAR ESTRADA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | MISC. NO. H-02-379 |
| | § | |
| GARY L. JOHNSON, Director, | § | |
| Texas Department of Criminal | § | |
| Justice. | § | |
| | § | |
| Respondent. | § | |

EXHIBITS TO AFFIDAVIT OF CHARLES S. KELLEY

AS APPENDED TO PETITION FOR WRIT OF HABEAS CORPUS

MAYER, BROWN, ROWE & MAW
Charles S. Kelley
James E. Tancula
700 Louisiana, Suite 3600
Houston, Texas 77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

ATTORNEYS FOR PETITIONER
LARRY EDGAR ESTRADA

1       APPELLATE COURT NO._____
        IN THE COURT OF APPEALS
2       IN THE STATE OF TEXAS
         AT AUSTIN
3

4  LARRY EDGAR ESTRADA,        APPELLANT

5  VS.

6  THE STATE OF TEXAS,         APPELLEE

7

8       TRIAL CAUSE NO. 746585
    APPEAL FROM THE 262ND JUDICIAL DISTRICT
      OF HARRIS COUNTY, TEXAS
9  THE HONORABLE DOUG SHAVER, PRESIDING JUDGE

10       REPORTER'S RECORD
    GUILT/INNOCENCE PHASE, FEBRUARY 18, 1998
11

12  APPEARANCES:
   FOR THE STATE OF TEXAS:   FOR THE DEFENDANT:
13
   MR. VIC WISNER      MR. JERRY GUERINOT
14  TBA NO. 21819450     TBA NO. 08571500
   MS. KELLY SEIGLER     Attorney at Law
15  TBA NO. 10533450     1314 Texas, Ste. 1515
   Assistant District Attorneys Houston, Texas   77002
16  201 Fannin       (713) 225-0094
   Houston, Texas   77002   Fax (713) 225-0099
17  (713) 755-5800     MR. MIKE FOSHER
   Fax (713) 755-7752    TBA NO. 07280300
18            Suite 2100
             440 Louisiana
19            Houston, Texas   77002
             (713) 221-1810
20            Fax (713) 237-1408

21

22      LOUISE STECKLER, CSR 2186
       Official Court Reporter
23    262nd Judicial District Court
       Harris County, Texas
24
      VOLUME 21 OF\_\_\_\_ VOLUMES
25

EXHIBIT

1

1

Page 37

1  ESP? No, he was right. They were both
2  semiautomatic weapons. And a man with that kind of
3  background and experience and also the recollection
4  and snap to be able to identify the man who later,
5  by the way, gave a confession paid attention to the
6  weapons. You never heard him hesitate, have any
7  doubt or any questions whatsoever to the fact that
8  this defendant is the one who had the smaller
9  weapon. And you know the .380s typically are
10  smaller than 9 millimeters.
11          You have no reason whatsoever to
12  think Menaf was going to lie about that. I mean, he
13  told you, I don't know for sure who shot me or who
14  shot Georges, but I know for sure this defendant had
15  the smaller weapon. There's nothing that should
16  cause you to disbelieve that in any way.
17          So what are you going to do with
18  that information? Are you going to reward this
19  defendant because he was able to dispose of the
20  weapon? Does he get a freebie out of that because
21  he's smart enough to get rid of the murder weapon?
22  Is this what this is all about? If you find this
23  defendant guilty of felony murder or aggravated
24  robbery, like Mr. Guerinot would ask you to do --
25  I'll say it to you honestly -- then this is a joke.

Page 38

1  Because if this defendant is not guilty of capital
2  murder, then nobody is.
3          Georges Elkrab and Menaf Khudari
4  came to this country from countries that we like to
5  pretend in the good old United States are violent
6  countries, Lebanon and Iraq. And they came here in
7  search of a dream, in search of a better life for
8  them and their families and look what they got.
9  Menaf has the scars on his head from a bullet wound
10  that will last until the day he dies. And Georges
11  came here to get married and have children and he
12  prospered in the great old United States of America
13  and now he's dead.
14          Because of the acts of this
15  defendant, because of the acts of this predator,
16  what happened to those dreams? His widow sits here,
17  a beautiful lady, who will live the rest of her life
18  without her husband because he pursued that dream in
19  this great country of ours. And so, yeah, his
20  children, his babies, will grow up in the United
21  States, the land of the free and the home of the
22  brave, but they'll grow up here without their daddy
23  because of that man. So find him guilty of capital
24  murder.
25          THE COURT: Members of the jury,

Page 39

1  go with your bailiff now and retire and consider
2  your verdict.
3          Alternates, this completes your
4  duty. If you'll go in there and get your gear while
5  you're in there, then you can come back outside.
6          (Whereupon the jury was retired
7  to the jury room to deliberate.)
8          (The jury was seated in the jury
9  box.)
10          THE COURT: Everyone be seated,
11  please.
12          Members of the jury, I have your
13  question. It reads: Name of the witness whose
14  statement is subject to disagreement: Attention:
15  Mr. Scott, lawyer questioning witness at the time of
16  the statement, the State. Statement in dispute:
17  Communication between Larry and Maurio during the
18  shooting of Georges Elkrab. What did this witness
19  hear?
20          She'll read you the answer.
21          (Whereupon the requested
22  testimony was read back by the court reporter as
23  follows:)
24          Questions by Mr. Wisner to Mr.
25  Scott:

Page 40

1  Q   What did you hear after the first
2  gunshot went off?
3  A   I heard someone shouting, Shoot him
4  again.
5  Q   Could you tell which one of the robbers
6  was saying, Shoot him again, the masked one or
7  unmasked one?
8  A   I couldn't be for sure which one it was.
9          (End of testimony requested to be
10  read back.)
11          (Whereupon the jury resumed their
12  deliberations.)
13          (Whereupon the jury was seated in
14  the jury box.)
15          THE COURT: Ms. Foreman, I
16  understand you have a verdict; is that correct?
17          THE FOREPERSON: Yes.
18          THE COURT: If you'll pass it to
19  Mr. Bernard, please.
20          Mr. Estrada, if you'll please
21  stand.
22          We, the jury, find the defendant,
23  Larry Edgar Estrada, guilty of capital murder as
24  charged in the indictment. Signed by the foreperson
25  of the jury.

APPELLATE COURT NO._____
IN THE COURT OF APPEALS
IN THE STATE OF TEXAS
AT AUSTIN

LARRY EDGAR ESTRADA,                          APPELLANT

VS.

THE STATE OF TEXAS,                           APPELLEE

TRIAL CAUSE NO. 746585
APPEAL FROM THE 262ND JUDICIAL DISTRICT
OF HARRIS COUNTY, TEXAS
THE HONORABLE DOUG SHAVER, PRESIDING JUDGE

REPORTER'S RECORD
PUNISHMENT PHASE, FEBRUARY 23, 1998

APPEARANCES:
FOR THE STATE OF TEXAS:           FOR THE DEFENDANT:

MR. VIC WISNER                    MR. JERRY GUERINOT
TBA NO. 21819450                  TBA NO. 08571500
MS. KELLY SEIGLER                 Attorney at Law
TBA NO. 10533450                  1314 Texas, Ste. 1515
Assistant District Attorneys      Houston, Texas   77002
201 Fannin                        (713) 225-0094
Houston, Texas   77002            Fax (713) 225-0099
(713) 755-5800                    MR. MIKE FOSHER
Fax (713) 755-7752                TBA NO. 07280300
                                  Suite 2100
                                  440 Louisiana
                                  Houston, Texas   77002
                                  (713) 221-1810
                                  Fax (713) 237-1408

LOUISE STECKLER, CSR 2186
Official Court Reporter
262nd Judicial District Court
Harris County, Texas

VOLUME 24 OF_____ VOLUMES

EXHIBIT
2

1

Page 49

1  Statement in dispute: Caliber of the bullet found
2  in the television.
3          (Whereupon the following
4  testimony was read back to the jury:)
5          THE COURT REPORTER: This is
6  direct examination of Mr. Anderson by Ms. Seigler.
7      Q  Did you also examine in State's Exhibit
8  Number 28, EB-1 and 2 submitted to you from the
9  scene also, recovered from the television monitor?
10     A  When I run this, I only had the one and
11 later on I run it, guessed it, but I don't have a
12 list in here.  You may have the last report.  I
13 don't.
14     Q  Looking at this copy of the report where
15 it reflects EB-1 --
16     A  Yes.
17     Q  -- what type of weapon fired EB-1?
18     A  Okay.  It's -- that's a listing of about
19 seven.
20     Q  Okay.  Of which caliber?
21     A  Of 9 millimeter.
22     Q  And in referring to EB-2 here that you
23 have examined, is that consistent with the morgue
24 bullets that you examined, EB-6 and 7?
25     A  Yes, it is.

Page 50

1      Q  So EB-2 was fired out of what type of
2  weapon, Mr. Anderson?
3      A  .380.
4          THE COURT: We've answered your
5  question.
6          (Whereupon the jury resumed
7  deliberating.)
8          THE COURT: Members of the
9  audience, you're all welcome to be here.  None of us
10 know what the verdict is, but I will tell you there
11 can be no showing of pleasure or displeasure
12 whatever the verdict may be.  Bring me a jury.
13         (Whereupon the jury was seated in
14 the jury box.)
15         THE COURT: Ms. Foreman, I
16 understand you have a verdict; is that correct?
17         THE FOREPERSON: Yes, sir.
18         THE COURT: Pass it to the
19 bailiff.
20         Special Issue Number 1: Do you
21 find from the evidence beyond a reasonable doubt
22 that there is a probability the defendant, Larry
23 Edgar Estrada, would commit criminal acts of
24 violence that would constitute a continuing threat
25 to society?

Page 51

1          The jury has answered yes.
2          Special Issue Number 2: Do you
3  find from the evidence beyond a reasonable doubt
4  that Larry Edgar Estrada, the defendant himself,
5  actually caused the death of Georges Elkrab on the
6  occasion in question or if he did not actually cause
7  the death of Georges Elkrab that he intended to kill
8  Georges Elkrab or that he anticipated a human life
9  would be taken?
10         The answer to that Special Issue
11 is yes.
12         Special Issue Number 3, do you
13 find from the evidence, taking into consideration
14 all of the evidence, including the circumstances of
15 the offense, the defendant's character and
16 background and the personal moral culpability of the
17 defendant, Larry Edgar Estrada, that there is a
18 sufficient mitigating circumstance or circumstances
19 to warrant that a sentence of life imprisonment
20 rather than a death sentence be imposed?
21         And the jury has answered no.
22         And all verdicts are signed by
23 the foreperson of the jury.
24         Y'all may be seated for a moment.
25         Members of the jury, I'm going to

Page 52

1  call your names.  As I call each of your names, my
2  question is simply this:  Is this your verdict?  If
3  it was, simply answer yes.  Obviously, if it was
4  not, answer no.
5          Ms. Patricia Kessler?
6          JUROR: Yes, sir.
7          THE COURT: Mr. Larry Peurifoy?
8          JUROR: Yes.
9          THE COURT:  Ms. Leslie Trudeau?
10         JUROR: Yes.
11         THE COURT: Ms. Jill Kunnecke?
12         JUROR: Yes.
13         THE COURT: Mr. Rafael Ruiz?
14         JUROR: Yes.
15         THE COURT:  Mr. James Dale?
16         JUROR: Yes.
17         THE COURT: Mr. Arnold Brunner?
18         JUROR: Yes.
19         THE COURT: Mr. William Fleeger?
20         JUROR: Yes.
21         THE COURT: Mr. Mark Rister?
22         JUROR: Yes.
23         THE COURT: Mr. Kurt Feike?
24         JUROR: Yes.
25         THE COURT: Mr. Gregory Hubbard?

Page 53

1    JUROR: Yes.
2    THE COURT: Mr. Richard Boehm?
3    JUROR: Yes.
4    THE COURT: The verdict will be
5  accepted.
6        Members of the jury, that
7  completes your jury service. We all want to thank
8  you. If you'll step in the jury room for a few
9  minutes, please.
10       (Whereupon the jury was retired
11  to the jury room.)
12    THE COURT: Mr. Estrada, based on
13  the answers that the jury has returned to the
14  Special Issues submitted to them, the Court now
15  assesses your punishment at death.
16       Now, if you'll be seated, do you
17  wish to have a victim impact statement before formal
18  sentencing?
19    MR. WISNER: No, Your Honor,
20  decided not to.
21    THE COURT: Then stand up again,
22  Mr. Estrada. It's the order of the Court, said
23  defendant, Larry Edgar Estrada, who's been adjudged
24  to be guilty of capital murder whose punishment has
25  been assessed by a verdict of the jury and the

Page 54

1  judgment of the Court at death shall be executed in
2  accordance with the provisions of the law of the
3  State of Texas and said defendant, Larry Edgar
4  Estrada, shall be taken by the sheriff of Harris
5  County, Texas, and shall be delivered by the sheriff
6  of Harris County, Texas, immediately to the director
7  of the Institutional Division, Texas Department of
8  Criminal Justice, or other persons legally
9  authorized to receive such convicts. And said
10  defendant shall be confined at said Institutional
11  Division, Texas Department of Criminal Justice in
12  accordance with the provisions of the law governing
13  the Institutional Division of the Texas Department
14  of Criminal Justice of said state and the director
15  is hereby commanded and ordered to keep the said
16  Larry Edgar Estrada, pending receipt in this court
17  of mandate of the Court of Criminal Appeals in
18  Austin, Texas, and further directions of this Court,
19  the defendant is remanded to jail until said sheriff
20  can obey the directions of the sentence.
21       All right, sir. You can go with
22  the bailiff.
23       This court is in recess.
24       (The proceedings were completed.)
25

Page 55

1  THE STATE OF TEXAS
2  COUNTY OF HARRIS
3       I, Louise Steckler, Official Court Reporter in
4  and for the 262nd District Court of Harris County,
5  State of Texas, do hereby certify that the above and
6  foregoing contains a true and correct transcription
7  of all proceedings directed by counsel to be
8  included in the Court Reporter's Record in the above
9  styled and numbered cause, all of which occurred in
10  open court or in chambers and were reported by me.
11       I further certify that this transcript of the
12  record of the proceedings truly and correctly
13  reflects the exhibits, if any, offered by the
14  respective parties.
15       WITNESS my hand this the 1-2 day of
16  May , A.D., 1998.
17
18
19
20  Certificate No. 2186    Louise Steckler
     Expires:  12-31-99    Official Court Reporter
21  301 San Jacinto, 5th Floor
     Houston, Texas  77002
22  (713) 755-6961
23
24
25



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO.73,054

### LARRY EDGAR ESTRADA, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL
### FROM HARRIS COUNTY

**KEASLER, J.,** *delivered the opinion of the Court.*

## O P I N I O N

Larry Estrada participated in a capital murder. The jury convicted him and answered the special issues affirmatively. The trial judge then sentenced him to death. Estrada appeals, alleging eleven points of error. After reviewing the record, we affirm the conviction.

### I. Victim Impact Evidence At The Guilt/ Innocence Phase Of Trial

In his first point of error, Estrada contends that the trial court improperly allowed the admission of victim character and victim impact evidence at the guilt/innocence phase of

EXHIBIT

3

trial. He argues that this evidence was irrelevant to any issue of guilt, inadmissible as rebuttal evidence, and that its admission denied him due process and due course of law. Estrada specifically complains of testimony by Ali Gahar --- the victim's accountant and a close friend of the victim's widow.

As the prosecutor began to ask Gahar detailed questions about the victim, Georges Elkrab, and his "background and things like that," Estrada objected. He asked for, and was granted, a running objection to "this entire line of questioning" due to its lack of relevance to the issues in the indictment. Gahar went on to testify about the following: (1) Elkrab's immigration to this country and education; (2) his marriage and family; (3) his burial in Lebanon and his customers' voluntary contributions to fund it; (4) his lack of life insurance and (5) his family's destitute financial status following his death. In addition, Gahar testified to the amount of money stolen in the robbery and identified the victim from a photograph.

The State contends that Estrada failed to preserve error on this point because, although running objections are permissible, his objection was too broad and encompassed non-objectionable material.[1]  It would seem that, by his stated objection, Estrada intended to object to all of the prosecutor's questions pertaining to the victim's background and related matters. The questions asked generally pertained to the victim's personal history, so Estrada's running objection preserved error regarding those issues because it was timely and

---

[1] *See Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991), *citing Sattiewhite v. State*, 786 S.W.2d 271, 283-84 n.4 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990).

stated his specific grounds.[2] But the final questions, regarding the amount of money stolen and the victim's identity, were not related to the victim's background and were very relevant to the charged offense. We find that Estrada did not preserve error regarding these issues.[3]

Relevant evidence is that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence.[4] The evidence must "logically increase one's knowledge and enhance the likelihood of ascertaining the truth about the [consequential] fact."[5] On the other hand, irrelevant evidence is inadmissible.[6] Questions of relevance should usually be left to the trial court, and we will not reverse a decision unless there is an abuse of discretion.[7] If the trial court's ruling is within the zone of reasonable disagreement, the decision will be upheld.[8]

Here, the consequential facts at issue pertained to whether Estrada caused the death of Elkrab by shooting him with a deadly weapon while in the course of committing or attempting to commit robbery. None of the testimony preserved for review seems to logically enhance the likelihood of determining whether Estrada is guilty of the charged offense. But

---

[2] *See Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996).

[3] *See* TEX. R. APP. P. 33.1(a).

[4] TEX. R.CRIM. EVID. 401.

[5] *Brown v. State*, 757 S.W.2d 739, 740 (Tex. Crim. App. 1988).

[6] TEX. R. CRIM. EVID. 402.

[7] *Ford*, 919 S.W.2d at 115.

[8] *Ibid*.

we have previously held admissible the testimony of a victim's widow which established the length of her marriage to the victim, the number of children they had, and whether the victim was alone the night of his murder.[9] Since this evidence did not touch on the physical, psychological, or economic effects of the crime on the victim or his family, we found it was not victim impact evidence.[10]

But Gahar's testimony concerning Elkrab's burial in Lebanon, his customers' voluntary contributions to fund the burial, the absence of life insurance and college money for Elkrab's daughters, and testimony that the family has now been forced to move in with Elkrab's widow's brother present a different question. These issues do bear on the physical, psychological, and economic effects of the crime on the victim's family. Such victim impact evidence is irrelevant to the question of Estrada's guilt of the charged offense and is therefore inadmissible. The trial court erred in admitting this evidence.

That said, we must address the question of harm. Under Rule 44.2 harm analysis, we must first determine whether the error is of constitutional magnitude or affects a substantial right.[11] Estrada argues that this evidence was not only irrelevant, but that its admission was a violation of his due process and due course of law right to a fair trial. Yet, he does not

---

[9] *See Matchett v. State*, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996), *cert. denied*, 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).

[10] *Ibid, citing Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992).

[11] *Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998); *see also* TEX. R. APP. P. 44.2.

explain how these constitutional principles apply to the violation of an evidentiary rule. We conclude that the error was not of constitutional magnitude.

We must next determine whether Estrada's substantial rights were affected. If not, the error is harmless according to Tex. R. App. P. 44.2(b). We have recognized that a substantial right is affected when the complained-of error had a substantial and injurious effect or influence in determining the jury's verdict. We will not overturn Estrada's conviction for non-constitutional error if, after examining the record as a whole, we have a fair assurance that the error either did not influence the jury or had only a slight effect.[12]

While he concedes that the irrelevant testimony was brief, Estrada contends that the State made effective use of it. Gahar was the last witness the jurors heard before deliberating Estrada's guilt, as the defense presented no witnesses at this stage. In her closing argument, the prosecutor told the jury that if they convicted Estrada of anything but capital murder, then "this is a joke." The prosecutor again referred to Elkrab's status as an immigrant who left behind a widow and two fatherless children. Estrada claims that this argument, in combination with the irrelevant testimony, effectively encouraged the jury to convict Estrada of capital murder, instead of the two lesser offenses offered. He argues that the jury was left to make its decision on an improper and emotional basis.

But a surviving victim, Menaf Khudari, identified Estrada as one of the two men who robbed the convenience store where he worked. Khudari testified that Estrada and a masked man entered the store, and then Estrada chambered his gun, held it to Khudari's head, and

---

[12] *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

demanded money. After Khudari gave Estrada all the money from the store, and his own wallet, Estrada hit him on the head several times with the gun. The men demanded "the tape" from what Elkrab tried to explain was merely a "dummy camera" that was not recording. Either Estrada or the masked man shot the television monitor, shot Khudari in the ear, and shot Elkrab multiple times. But neither Khudari, nor the two customers in the store, could determine which man fired which shots. The testimony of the two customers confirmed Khudari's version of the facts, although neither of them had seen Estrada's face. Estrada was charged as a primary actor and as a party to this offense. Khudari's testimony, at a minimum, established Estrada's guilt as a party to capital murder.

The jury deliberated for only an hour before deciding Estrada was guilty of capital murder. During deliberations, the jurors sent out several requests for evidence. But all of the evidence requested dealt with the consequential facts at issue in the trial, and not the irrelevant testimony. In closing argument, the State did not refer to Elkrab's burial or his family's financial woes. And the mere mention of Elkrab's immigrant status and his widowed wife and children was not erroneous. Given the other compelling evidence presented at trial, it is unlikely that the admission of the irrelevant evidence, even in combination with the closing argument, had a substantial and injurious effect on the jury's verdict. We find that any error that occurred in the admission of Gahar's testimony was harmless. This point of error is overruled.

## II. Jury Note

In another point of error, Estrada contends that the trial court abused its discretion by

responding to a jury note during guilt/innocence deliberations in a manner that was unrealistically prejudicial and gave the jury's request an overly literal interpretation. The jury requested Menaf Khudari's police statement which, although used during defense counsel's cross-examination of Khudari, was never admitted as evidence. The trial judge responded that the statement was not in evidence and would therefore not be provided.

Estrada argues that the trial judge should have interpreted the jury's request to be for a reading of Khudari's testimony concerning his police statement, not the statement itself. But at the time of trial, defense counsel did not object or except to the trial judge's response and so did not preserve error on this issue.[13] To preserve error in a trial court's response to a jury's request for testimony, the complaining party must make a timely and specific objection as soon as he knows or should know that an error has occurred.[14] As the issue here was not properly preserved for our review, this point of error is overruled.

### III. Extraneous Offense Evidence At The Punishment Phase Of Trial

In three points of error, Estrada complains about testimony offered by the State at the punishment phase of trial. Orthon Diaz identified Estrada as one of two men who invaded his home, robbed him and his roommate, and threatened to kill them. After the prosecution's examination of Diaz, defense counsel offered conclusive evidence that showed Estrada was in jail at the time of this extraneous offense and therefore could not have committed it. Estrada requested, and was denied, a mistrial. Instead, the prosecution withdrew the

---

[13] TEX. R. APP. P. 33.1

[14] *Hollins v. State*, 805 S.W.2d 475, 476-77 (Tex. Crim. App. 1991).

evidence and the judge instructed the jury to disregard the withdrawn evidence because it was "physically impossible" for Estrada to have committed the extraneous offense.

## A. Prosecutorial Misconduct

Estrada argues that the admission of this evidence was the result of prosecutorial misconduct because the prosecution knew or should have known that Estrada was in jail at the time the extraneous offense was committed. He contends that the District Attorney's Office was responsible for his incarceration at that time and the State's investigator had obtained Estrada's criminal history in preparation for the capital murder case. Estrada also notes that the State's notice of extraneous offenses had listed another offense he committed while in jail only seven days before this one.

Estrada's claims raise two aspects of due process law: (1) a prosecutor's failure to correct false testimony and (2) flawed investigative procedure by the State. As to the first point, the Supreme Court, as well as this Court, has held that a prosecutor's knowing failure to correct a witness' perjured testimony violates a defendant's right to due process.[15] Once it is found that the prosecution knew or should have known that the testimony was false, reversal is required if in any reasonable likelihood the testimony would have affected the judgment of the jury.[16]

The State contends that the prosecution had no indication that Estrada was in jail at

---

[15] See *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Ex Parte Adams*, 768 S.W.2d 281, 288 (Tex. Crim. App. 1989).

[16] *Adams*, 768 S.W.2d at 292, citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

the time of the robbery. It argues that defense counsel received notice of the State's intent

to introduce this evidence some three months before the punishment stage of trial began, but

did not raise the discrepancy until after the prosecution rested at punishment. The State

emphasizes that the trial court held a hearing outside the presence of the jury regarding this

issue and found that the prosecution acted negligently, but not intentionally. The State

further argues that the trial court's instruction to disregard was likely to have been effective,

noting the presumption that the jury will honor such instructions, coupled with the

compelling facts in this case.

We defer to the trial court's assessment that, although the prosecution was negligent

in putting this faulty evidence before the jury, there is nothing in the record to suggest this

was intentional misconduct meant to mislead or improperly sway the jury. The prosecutor

who offered the extraneous offense testified that ordinarily, the prosecution's files do not

indicate whether a defendant is in jail or free on bond during the pendency of a case. And

as soon as the prosecution was made aware of Estrada's incarceration on the day of the Diaz

robbery, steps were taken by the prosecutors and the court to remedy the error. The State

therefore did not fail in its duty to correct the false testimony.

In addition, there was a wealth of other punishment evidence the jury could have

considered in determining Estrada's future dangerousness. The jury viewed a videotape of

Estrada robbing and, with a butcher knife, slicing the throat of another convenience store

worker the day he was arrested for Elkrab's murder. The prosecution also introduced

evidence of Estrada's commission of two jail fights and yet another convenience store

robbery. Also, it introduced Estrada's conviction for drug possession. It is much more likely the jury was affected by this admissible evidence and the facts of the case itself, rather than the withdrawn evidence, in determining their answers to the special issues.

Next, we consider the propriety of the investigation. We have joined the Supreme Court in holding that a particularly improper State investigative procedure can result in the denial of an accused's right to due process. [17] When determining whether a flawed investigation led to the deprivation of an accused's right to due process and fundamental fairness, we look to the totality of the circumstances in the case. [18] We find that although the State's investigation was flawed, it did not deny Estrada his right to due process.

Although Estrada's motion for mistrial was denied, he was granted other relief by the trial court. We presume that an instruction to disregard testimony will be honored by the jury and will cure any harm resulting from the improper admission of that testimony. [19] We will uphold that presumption here and find that any alleged prosecutorial misconduct was cured by the withdrawal of the evidence and the trial court's instruction to disregard.

Finally, Estrada also complains, in passing, that the prosecutors conducted a suggestive show-up by allowing Diaz, just before he testified, to view Estrada sitting in the

---

[17] *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Ex Parte Brandley*, 781 S.W.2d 886, 891 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990).

[18] *See Brandley*, 781 S.W.2d at 892.

[19] *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App.), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Waldo v. State*, 746 S.W.2d 750, 753-54 (Tex. Crim. App. 1988).

courtroom at defense counsel's table. This is a wholly separate issue and Estrada has failed to adequately brief it. Therefore, we will not review it. This point of error is overruled.

### B. Ineffective Assistance Of Defense Counsel

Although Estrada contends that the use of Diaz's testimony was "blatant prosecutorial misconduct," he does concede that both sides shared the responsibility for getting the evidence before the jury. He argues that his own attorneys were constitutionally ineffective because they did not raise the discrepancy until after Diaz testified. He argues that if counsel knew Estrada was in jail when the extraneous offense was committed, they were ineffective for failing to prevent the jury from hearing the prejudicial testimony. And, if counsel did not know Estrada was in jail, they were ineffective for failing to thoroughly investigate his criminal history and, specifically, the extraneous offenses the State had notified them would be introduced.

In two points of error, Estrada asks this Court to revisit *Ex Parte Duffy*[20] and *Strickland v. Washington*[21] and reconsider the way in which we apply those cases to the Texas capital punishment scheme. We are not inclined to do so. We recently overruled *Duffy* in *Hernandez v. State*.[22] And in any event, the proper standard of review of counsel's effectiveness at the punishment stage of a capital murder trial, under state and federal law,

---

[20] 607 S.W.2d 507 (Tex. Crim. App. 1980).

[21] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[22] 988 S.W.2d 770, 771 (Tex. Crim. App. 1999).

is found in *Strickland*.[23] We routinely use the *Strickland* standard in reviewing such ineffective assistance claims.[24]

The first prong of *Strickland* requires a review of the totality of counsel's performance. An isolated omission, therefore, will not ordinarily support a finding of ineffective assistance.[25] And any allegation of ineffective assistance must be firmly founded in the trial court's record.[26]

Here, we find nothing in the record to support Estrada's claim of ineffective assistance regarding counsel's trial preparation. Nor do we find evidence to rebut the presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[27] That counsel failed to recognize Estrada was incarcerated on the day of the Diaz robbery may be an oversight, but is not a deficiency in performance grievous enough to deny Estrada the counsel he is guaranteed by the Sixth Amendment.[28]

---

[23] *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

[24] *See, e.g., McFarland v. State*, 845 S.W.2d 824, 847-48 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Rosales v. State*, 841 S.W.2d 368, 375 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

[25] *Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993).

[26] *McFarland v. State*, 928 S.W.2d 482, 499 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 85 (1997).

[27] *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994), *citing Strickland*, 466 U.S. at 689.

[28] *Jackson*, 877 S.W.2d at 771.

Even if Estrada met his burden of showing that counsel's performance was deficient, he has failed to meet the second prong of *Strickland*, which requires a showing of prejudice.[29] As soon as the discrepancy in evidence was discovered, the trial court quickly took action to correct it. The extraneous offense evidence was withdrawn and the trial court instructed the jury to disregard the evidence as it was "physically impossible" for Estrada to have committed the Diaz robbery. Moreover, considering the overwhelming amount of punishment evidence that was admitted, there is no reasonable probability that the result of Estrada's trial would have been different absent defense counsel's mistake. [30] These points of error are overruled.

## IV. Mitigation Special Issue

### A. Burden of Proof

In two related points of error, Estrada contends that the mitigation special issue given to the jury at the punishment phase of trial[31] violates the Eighth Amendment of the United States Constitution because it omits a burden of proof and makes impossible a meaningful appellate review of the jury's decision. In an additional point, he argues that Article 44.251 of the Texas Code of Criminal Procedure, which requires appellate review of the sufficiency of the capital punishment special issues, when interpreted in conjunction with Article 37.071 § 2(e), violates the Eighth Amendment.

---

[29] *Ibid.*

[30] *See Jackson*, 877 S.W.2d at 771, *citing Strickland*, 466 U.S. at 694.

[31] TEX. CODE CRIM. PROC. ANN. Art. 37.071 § 2(e) (Vernon Supp. 1999).

Estrada concedes that we have rejected these positions in previous cases and he presents no compelling arguments to encourage us to reconsider those decisions. As stated in *Baker v. State*, we will not review the sufficiency of mitigating evidence since the weighing of such evidence is a subjective determination undertaken by each individual juror.[32] Nor does Article 44.251 require us to review the sufficiency of mitigating evidence.[33] These points of error are without merit and overruled.

### B. Restriction of Mitigating Evidence

Estrada also contends that Article 37.071, § 2(e) and (f), unconstitutionally restrict the jury's consideration of mitigating factors to those which bear only upon Estrada's moral blameworthiness. Again, precedent invalidates Estrada's arguments.[34] The statutory definition of mitigating evidence allows an open-ended, subjective determination to be made by each individual juror, and therefore Article 37.071 does not unconstitutionally narrow the jury's discretion to factors only concerning moral blameworthiness.[35] In upholding previous decisions on this issue, we overrule this point of error.

### V. The "12-10 Rule" And Unanimity In Answering The Special Issues

---

[32] 956 S.W.2d 19, 21 (Tex. Crim. App. 1997), *citing McFarland*, 928 S.W.2d at 497-99.

[33] *Id.*

[34] *See Raby v. State*, 970 S.W.2d 1,8 (Tex. Crim. App. 1998), *cert. denied*, __ U.S. __, 119 S.Ct. 515, 412 L.Ed.2d 427 (1998) ; *King v. State*, 953 S.W.2d 266, 274 (Tex. Crim. App. 1997); *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).

[35] *Cantu v. State*, 939 S.W.2d 627, 648-49 (Tex. Crim. App. 1996), *cert. denied*, __ U.S. __ , 118 S.Ct. 557, 139 L.Ed.2d 399 (1997).

In two points of error, Estrada contends that Article 37.071 of the Texas Code of Criminal Procedure is unconstitutional because it forbids informing jurors of the effect of failing to agree on answers to the special issues. He also argues that the trial court committed reversible error in denying his request to instruct the jury that the failure to answer a special issue would result in a life sentence.

The "12-10 Rule" instructs the jury that it may not answer the first or second special issue "yes" unless it agrees unanimously and it may not answer "no" unless at least ten jurors agree.[36] In addition, the jury may not answer the third special issue "no" unless it agrees unanimously and it may not answer "yes" unless at least ten jurors agree.[37] We have previously stated that it is not unconstitutional to conceal from jurors the consequences of their deliberations so long as they are not misled into believing that the ultimate responsibility for the verdict lies elsewhere.[38] We have rejected arguments similar to Estrada's and are not now persuaded to reconsider those decisions.[39] These points of error are overruled.

---

[36] TEX. CODE CRIM. PROC. ANN. Art. 37.071 § 2(d)(2) (Vernon Supp. 1999).

[37] TEX. CODE CRIM. PROC. ANN. Art. 37.071§ 2(f)(2) (Vernon Supp. 1999).

[38] *McFarland*, 928 S.W.2d at 519, *citing Draughon v. State*, 831 S.W.2d 331, 337 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993).

[39] *See Pondexter v. State*, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1998); *Lawton v. State*, 913 S.W.2d 542, 558-59 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996) ; *Davis v. State*, 782 S.W.2d 211, 221-22 (Tex. Crim. App. 1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990).

ESTRADA - 16

## VI. Conclusion

Having overruled all of Estrada's points of error, we affirm the conviction.

DATE: September 15, 19999
DO NOT PUBLISH

53,49

APPLICANT LARRY EDGAR ESTRADA

APPLICATION FOR 11.071 WRIT OF HABEAS CORPUS XXX

APPLICATION NO. 53,499-01

APPLICATION DENIED WITH WRITTEN ORDER.

Per Curiam
JUDGE

10/9/02
DATE

**EXHIBIT**

4